UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| LE COMMODITIES, LLC, | : | |
| Plaintiff, | : | |
| v. | : | Court No.   25-00181 |
| THE UNITED STATES, | : | |
| Defendant. | : | |

**COMPLAINT**

Pursuant to Rule 3(a)(3) of the Rules of the United States Court of International Trade, Plaintiff LE Commodities, LLC, by and through its undersigned counsel, brings this action and alleges as follows.

## ADMINISTRATIVE DECISION TO BE REVIEWED

1. This action contests U.S. Customs and Border Protection's ("CBP") final affirmative determination of evasion, issued under 19 U.S.C. § 1517(f), including its initial determination issued under 19 U.S.C. § 1517(c), pursuant to the Enforce and Protect Act ("EAPA") Consolidated Case Number 7890. This determination involved allegations of evasion of the antidumping and countervailing duty ("AD/CVD") Orders on certain Oil Country Tubular Goods ("OCTG") From the People's Republic of China ("China"). *Certain Oil Country Tubular Goods from the People's Republic of China: Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*, 75 Fed. Reg. 3,203–04 (Jan. 20, 2010); *Certain Oil Country Tubular Goods from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order*, 75 Fed. Reg. 28,551, 28,553 (May 21, 2010) ("AD/CVD Orders"). CBP determined that Plaintiff evaded the AD/CVD Orders

when Plaintiff entered OCTG produced by Petroleum Equipment (Thailand) Co., Ltd. ("PET"), located in Thailand, as merchandise not covered by the AD/CVD Orders.

2. On May 31, 2024, CBP issued a Notice of Initiation of Investigation and Interim Measures ("Interim Measures") to ten importers of OCTG: (1) Amek Aluminum & Stainless, Inc. ("Amek"); (2) Centric Pipe LLC ("Centric Pipe"); (3) Copley International Group Co Ltd.; (4) Energy Pipe & Equipment Rentals LLC ("Energy Pipe"); (5) Kana Energy Services Inc. ("Kana"); (6) Optima Steel International LLC;4 (7) LE Commodities, LLC ("LE Commodities"); (8) Longfellow Energy, LP; (9) Trek Metals Inc. ("Trek Metals"); and (10) TSPGA LLC ("TSPGA"), (collectively, the "Importers") concerning evasion of the AD/CVD Orders. CBP's Interim Measures were based on an allegation that the Importers transshipped Chinese origin OCTG through Thailand to the United States.

3. On February 24, 2025, CBP's Trade Remedy and Law Enforcement Directorate ("TRLED") issued its Notice of Determination as to Evasion – EAPA Consolidated Case Number 7890 ("TRLED Determination").

4. On July 2, 2025, CBP's Office of Trade, Regulations & Rulings ("RR") affirmed TRLED's Determination. *See* Administrative Review Determination in EAPA Consolidated Case No. 7890, CBP's Office of Trade Regulations & Rulings (July 2, 2025) ("Administrative Review Determination"). The TRLED Determination and the Administrative Review Determination are referred to collectively herein as "CBP's EAPA decisions."

5. CBP's EAPA decisions cover entries of OCTG made from February 1, 2023, through the pendency of the investigation. Plaintiff imported OCTG from Thailand that is covered by the EAPA investigation.

## JURISDICTION

6. Plaintiff contests CBP's EAPA decisions pursuant to 19 U.S.C. § 1517(g).

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), because this action is commenced pursuant to 19 U.S.C. § 1517 within 30 business days of the date of the Administrative Review Determination.

## PARTIES

8. Plaintiff is a company organized under the laws of the United States. Plaintiff imported the subject OCTG from Thailand. Plaintiff participated in the EAPA investigation by filing questionnaire responses, written comments, and an administrative appeal.

9. Defendant United States is the federal government and is the statutory defendant under 28 U.S.C. § 1581(c).

## STANDING

10. Plaintiff is the importer of record in the United States of OCTG from Thailand and participated in the EAPA investigation by filing questionnaire responses, written comments, and an administrative appeal. Plaintiff has standing to seek judicial review because Plaintiff is "a person determined to have entered such covered merchandise through evasion." 19 U.S.C. § 1517(g); *see* 28 U.S.C. § 2631(i); 5 U.S.C. § 702.

## TIMELINESS OF THIS ACTION

11. RR issued the Administrative Review Determination on July 2, 2025. This Complaint and the concurrently filed Summons are timely filed within 30 business days after the completion of CBP's review, which was completed on July 2, 2025. Accordingly, Plaintiff has commenced this action within the statutorily-prescribed time limits specified in 19 U.S.C. § 1517(g)(1).

**STATEMENT OF FACTS**

**I.     AD/CVD Orders on Certain OCTG from China**

12.     On January 10, 2010, the U.S. Department of Commerce ("Commerce") issued a countervailing duty order on certain OCTG from China. On May 21, 2010, Commerce issued an antidumping duty order on certain OCTG from China. The scope of the AD/CVD Orders provides in relevant part:

> The scope of this order consists of certain OCTG, which are hollow steel products of circular cross-section, including oil well casing and tubing, of iron (other than cast iron) or steel (both carbon and alloy), whether seamless or welded, regardless of end finish ( *e.g.,* whether or not plain end, threaded, or threaded and coupled) whether or not conforming to American Petroleum Institute ("API") or non-API specifications, whether finished (including limited service OCTG products) or unfinished (including green tubes and limited service OCTG products), whether or not thread protectors are attached. The scope of the order also covers OCTG coupling stock. Excluded from the scope of the order are casing or tubing containing 10.5 percent or more by weight of chromium; drill pipe; unattached couplings; and unattached thread protectors.

75 Fed. Reg. at 3,203-04; 75 Fed. Reg. at 28,553.

**II.    EAPA Proceeding**

13.     On January 18, 2024, and February 1, 2024, the U.S. OCTG Manufacturer's Association ("USOMA"), a trade association of domestic producers, filed EAPA allegations with CBP regarding the evasion of AD/CVD duties by the Importers. Interim Measures at 2. The USOMA alleged that the Importers imported Chinese-origin OCTG that was transshipped through Thailand by PET and Thai Oil Pipe Co., Ltd. *Id*.

14.     On February 23, 2024, CBP initiated an EAPA investigation of the Importers. Interim Measures at 27. The public version of USOMA's original EAPA allegation and CBP's EAPA initiation notice were not released to Plaintiff until May 31, 2024. *Id*. at 1.

15. Plaintiff was first notified of the EAPA investigation when CBP provided its Interim Measures on May 31, 2024, over three months after CBP initiated the EAPA investigation based on USOMA's allegations. *Id*. at 1. In its Interim Measures, CBP consolidated the investigations, suspended liquidation of Plaintiff's entries of OCTG from Thailand entered on or after February 23, 2024, and extended the liquidation of unliquidated entries entered before this date. *Id*. at 26.

16. Plaintiff responded to CBP's initial request for information ("RFI") in July 2024 and supplemental RFI in September 2024. Amek, Centric Pipe, Energy Pipe, TSPGA, and Kana, also fully and timely responded to CBP's RFIs.

17. In their responses, Plaintiff and importers Amek, Centric Pipe and TSPGA provided substantial evidence explaining that the OCTG they imported was produced by PET at its facility in Thailand.

18. Plaintiff provided substantial evidence relating to transactions involving the sale of the OCTG produced by PET. Plaintiff provided extensive record evidence demonstrating that the imported OCTG was properly declared as products of Thailand under applicable U.S. law. In its RFI responses, Plaintiff provided email communications with its supplier, mill test certificates issued by PET, quality certificates issued by American Systems Register LLC (accredited by ANSI), TUV Rheinland Germany, and the American Petroleum Institute, certificates of origin, and shipping documents that supported the production of the OCTG in Thailand by PET. Each quality certificate, issued by credible institutions, identifies PET as a "manufacturer" of steel pipes. The certificates of origin issued by the Thailand Ministry of Commerce attested that PET's OCTG was products of Thailand.

5

19. Plaintiff was the importer of record of shipments of OCTG during the period of investigation. As stated above, the OCTG imported by Plaintiff was produced by PET, was documented as a product of Thailand, and was properly declared as a product of Thailand on the customs entries. The OCTG produced in Thailand was not subject to the AD/CVD Orders.

20. PET, as the foreign producer, responded to two RFIs issued by CBP and cooperated in a site visit. PET provided substantial evidence demonstrating that PET had the necessary production capacity and produced the quantities of OCTG shipped to the Importers.

21. Evidence on the record clearly demonstrates that the OCTG was manufactured in Thailand. To produce the OCTG pipe, PET imported China-origin hollow and solid steel billets. Documents on the record show that during the period of investigation PET imported hundreds of shipments of solid and hollow billets. *See* PET RFI (July 9, 2024). PET's RFI response identifies all raw material purchases of billets and identifies the suppliers and quantities purchased, and PET was able to reconcile all raw material purchases to its financial statements. *Id.*; PET Verification Exhibit 13. The billets were then entered into production at PET, where they underwent extensive processing to produce OCTG. *See* LE Commodities Written Argument (Dec. 26, 2024), at 5-13.

22. Evidence on the record, including raw material acquisition records, production records, and sales records, clearly demonstrates that PET had the necessary production capacity to produce the quantities of OCTG shipped to the Importers.

23. PET provided all requested sales and production records for shipments associated with the specific bills of lading requested by CBP during the onsite Verification of PET conducted between October 28, 2024 and November 1, 2024, and submitted reconciliations of its billet supplier invoices and proofs of payment to its general ledger. PET Verification Exhibits 22

and 25. PET supplied additional records at verification, including but not limited to electricity and natural gas bills and detailed reconciliations of raw material purchases and production data. PET Verification Exhibits 8, 13, 16, and 17.

24. On February 24, 2025, CBP issued the public version of the TRLED Determination finding that there was substantial evidence that the Importers imported OCTG from China into the United States by undervaluation, misclassification, and transshipment through Thailand by evasion. TRLED Determination at 2, 66.

25. Section 1517(a)(5) of Title 19 of the United States Code defines "evasion;"

> The terms 'evade' and 'evasion' refer to the entry of covered merchandise into the customs territory of the United States for consumption by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, and that results in any cash deposit or other security or any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the covered merchandise.

26. Section 1517(a)(5) also states:

> entering covered merchandise into the customs territory of the United States by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, and that results in any cash deposit or other security or any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the merchandise.

19 U.S.C. § 1517(a)(5)(A); 19 C.F.R. § 165.1.

27. "Covered merchandise" is merchandise that is subject to an antidumping duty or countervailing duty order issued pursuant to 19 U.S.C. § 1673e or § 1671e, respectively. 19 U.S.C. § 1517(a)(3).

28. The Commissioner "shall make a determination, based on substantial evidence, with respect to whether such covered merchandise was entered into the customs territory of the United States through evasion." 19 U.S.C. § 1517(c)(1)(A); *see* 19 C.F.R. § 165.27(a).

29. The plain scope of the AD/CVD Orders demonstrates that the "covered merchandise" is limited to OCTG produced in China and does not cover OCTG made in Thailand.

30. Between April 4, 2025 and April 7, 2025, Centric Pipe, Energy Pipe, Kana, LE Commodities, TSPGA, and Trek Metals each timely submitted requests for administrative review. On April 9, 2025, RR emailed the parties to notify them of commencement of administrative review process and the assignment of case number H346715. On July 2, 2025, RR issued its decision affirming the TRLED Determination under 19 U.S.C. § 1517(c). Administrative Review Determination at 28.

31. The TRLED Determination applied adverse inferences against PET and several importers. TRLED did not apply adverse inferences against Plaintiff.

32. In the Administrative Review Determination, RR did not apply adverse inferences to PET or any importers.

## STATEMENT OF CLAIMS

33. CBP's TRLED Determination and Administrative Review Determination are unsupported by substantial evidence, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law as set forth below.

### COUNT 1 – Lack of Substantial Evidence:

34. The facts and allegations contained in paragraphs 1 through 33 are restated and incorporated herein by reference.

35. Substantial evidence on the record shows that the OCTG was produced by PET in Thailand from hollow or solid billets. During the period of investigation PET imported hundreds of shipments of solid and hollow billets which were entered into production at PET and underwent extensive processing to produce OCTG.

36. The Chinese origin inputs such as solid and hollow billets are not OCTG subject to the AD/CVD Orders and thus are not covered merchandise under the plain scope. The finished OCTG produced by PET in Thailand is not covered merchandise because it was produced in Thailand. Thus, the evidence did not support CBP's finding that covered merchandise was entered into the U.S. through evasion.

37. CBP's EAPA decisions finding evasion are arbitrary, capricious, and contrary to law as they are not based on substantial evidence on the record. In fact, substantial evidence on the record demonstrates that the OCTG was produced in Thailand and is therefore outside the scope of the AD/CVD Orders.

**COUNT 2 – OCTG Produced from Hollow Steel Billets Is Not Subject to the Orders**

38. The facts and allegations contained in paragraphs 1 through 37 are restated and incorporated herein by reference.

39. The Administrative Review Determination concluded that the hollow steel billets used by PET to produce the subject OCTG were "unfinished OCTG" subject to the AD/CVD Orders. Administrative Review Determination at 19-20.

40. The conclusion in the Administrative Review Determination that the hollow steel billets are within the scope of the Orders is an interpretation of the scope of the orders.

9

41. The Commerce Department has never issued a scope ruling finding that OCTG produced in a third country from hollow steel billets from China are within the scope of the AD/CVD Orders.

42. CBP does not have statutory or regulatory authority to interpret the scope of the Orders.

43. Other than the one fact that hollow steel billets have a circular cross section, CBP did not cite any evidence in the record to support its conclusion that the hollow steel billets are within the scope of the AD/CVD Orders.

44. The Administrative Review Determination failed to take into account that the hollow steel billets had irregular cross sections and that the wall thickness and outer diameter would not be fixed until after processing of the hollow steel billets at PET's facility. *See* PET Verification Exhibit 3.

45. The hollow steel billets used by PET are not "green tubes" or "mother pipe" and there is no substantial evidence in the record to the contrary.

46. OCTG produced in Thailand from hollow steel billets is not subject to the AD/CVD Orders.

47. CBP's determination that hollow steel billets, or OCTG produced in Thailand from hollow steel billets, are within the scope of the Orders was contrary to law because it exceeded CBP's statutory authority.

48. CBP's determination that hollow steel billets, or OCTG produced in Thailand from hollow steel billets, are within the scope of the Orders lacked substantial evidence in the record and was therefore arbitrary, capricious and contrary to law.

**COUNT 3 – Plaintiff did not enter covered merchandise through a false statement:**

49. The facts and allegations contained in paragraphs 1 through 48 are restated and incorporated herein by reference.

50. To reach an affirmative determination as to evasion, EAPA requires that CBP find that the entry in question was made by a material false statement or act or material omission that avoided an AD or CVD deposit obligation.

51. Plaintiff did not make any materially false statements or omissions by entering the OCTG as a product of Thailand.

52. Substantial evidence in the record establishes that the OCTG imported by Plaintiff was a product of Thailand, and therefore Plaintiff's entries declaring the imported OCTG as a product of Thailand were not false.

53. CBP's finding that Plaintiff entered merchandise by a false statement lacks substantial evidence in the record, and is therefore arbitrary, capricious, and contrary to law.

**COUNT 4 – Plaintiff Exercised Reasonable Care**

54. The facts and allegations contained in paragraphs 1 through 53 are restated and incorporated herein by reference.

55. A determination of evasion under EAPA requires a finding of a material false statement or omission and some level of culpability.

56. Given the due diligence and reasonable care exercised by Plaintiff, no materially false statements or omissions were made when the goods entered the U.S. customs territory. Plaintiff reasonably relied on certificates to ensure compliance with U.S. trade laws. Plaintiff did not have any knowledge of any transshipment or evasion at the time of entry.

57. Consequently, the claim that Plaintiff imported "covered merchandise" without properly claiming that the merchandise is subject to the AD/CVD Orders is insufficient to establish evasion under EAPA. Therefore, Plaintiff did not evade the AD/CVD Orders and CBP's finding of evasion is arbitrary, capricious, and contrary to law.

### COUNT 5 – Improper Application of Adverse Inferences:

58. The facts and allegations contained in paragraphs 1 through 57 are restated and incorporated herein by reference.

59. In reaching an affirmative determination as to evasion, EAPA grants CBP the authority to apply adverse inferences if a party has failed to cooperate with a request for information. Adverse inferences allow CBP to rely on information derived from the allegation, prior determinations, or any other available sources. 19 U.S.C. § 1517(c)(3)(A).

60. The application of an adverse inference first requires CBP to make a finding that a party failed to act to the best of its ability to comply with a request for information.

61. PET responded comprehensively to all CBP requests. PET fully cooperated to the best of its ability throughout the investigation or on-site verification conducted by CBP.

62. PET's transparency and cooperation throughout the investigation and verification demonstrates PET's good-faith efforts to comply with CBP's inquiries.

63. The TRLED Determination applied adverse inferences against PET.

64. RR's Administrative Review Determination was conducted *de novo*. The Administrative Review Determination did not apply adverse inferences to PET.

65. The application of adverse inferences to PET is unsupported by substantial evidence and is arbitrary, capricious and contrary to law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment as follows:

(1) Declaring that CBP's TRLED Determination and Administrative Review Determination are unsupported by substantial evidence, arbitrary, capricious, and otherwise contrary to law;

(2) Remanding CBP's TRLED Determination and Administrative Review Determination to CBP with instructions to terminate the investigation;

(3) Directing CBP to liquidate LE Commodities' entries of OCTG imported from PET in Thailand without AD/CVD;

(4) Award Plaintiff costs and any reasonable attorneys' fees and expenses; and

(5) Grant such additional relief as the Court may deem just and proper.

Respectfully Submitted,

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP

*/s/ Erik D. Smithweiss*
Erik D. Smithweiss
Jordan C. Kahn*
Katherine A. Dobscha**
Sarah E. Raymond**

707 Wilshire Blvd, Suite 4150
Los Angeles, CA 90017
(213) 452-0863
-and-
*1201 New York Avenue, N.W., Suite 650
Washington, D.C. 20005
(202) 661-7784
-and-
**599 Lexington Avenue, 36th Floor
New York, NY 10022
(212) 557-4400

*Counsel for Plaintiff LE Commodities, LLC.*

Dated: August 13, 2025